UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KIMBERLY B. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-95-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court is the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 17 & 18] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20]. Kimberly B. Wilson ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** the Plaintiff's motion, and **DENY** the Commissioner's motion.

**I.  PROCEDURAL HISTORY**

On August 29, 2011, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began January 12, 2010. [Tr. 188-90, 216]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

[Tr. 136]. A hearing was held before the ALJ on January 10, 2013 [Tr. 3752], and on April 18, 2013, the ALJ found that the Plaintiff was not "disabled." [Tr. 79-87]. The Appeals Council remanded the case for further evaluation, and on December 19, 2014, a second hearing was held before a different ALJ. [Tr. 53-73]. On January 12, 2015, the ALJ again found that the Plaintiff was not disabled. [Tr. 12-35]. The Appeals Council denied the Plaintiff's request for review [Tr. 2-5]; thus, the ALJ's decision became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on November 23, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

### III.  ANALYSIS

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

3

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

In this case, the Plaintiff alleges several errors committed by the ALJ. First, the Plaintiff maintains that the ALJ failed to properly evaluate the medical opinions of her treating physician, Craig Laman, M.D. [Doc. 18 at 13-16]. The Plaintiff contends that Dr. Laman's opinions are consistent with and supported by the opinions of treating neurologist Michael Fromke, M.D., and consultative examiner Robert Blaine, M.D., whose opinions the ALJ also failed to properly assess. [*Id.*]. Second, the Plaintiff argues that the ALJ failed to properly consider the Plaintiff's credibility and subjective allegations. [*Id.* at 18-19]. Lastly, the Plaintiff submits that the hypothetical question submitted to the vocational expert ("VE") during the administrative hearing did not include all of the Plaintiff's impairments. [*Id.* at 16-18]. The Court will address each alleged

4

error in turn.

### A. Medical Opinions of Record

#### 1. Treating Physicians - Michael Fromke, M.D., and Craig Laman, M.D.

The Plaintiff's primary basis for alleging disability, as well as the evidence most relevant to the issues of appeal, center around the Plaintiff's back pain. After continued complaints of back pain, the Plaintiff's treating neurologist, Dr. Fromke, performed a lumbar spinal fusion at L4-L5 in March 2010. [Tr. 294-98]. Dr. Fromke was initially optimistic about the Plaintiff's prognosis following surgery as the Plaintiff demonstrated slow but steady improvement and was expected to be released to work in April 2011. [Tr. 421, 423]. In March 2011, one year post-operative, the Plaintiff continued to experience unrelenting neuropathic pain in her right leg, between her thigh and knee, which made standing or sitting for long periods "quite difficult." [Tr. 422]. Upon examination, the Plaintiff demonstrated slightly limited range of motion and muscle spasms were present, but segmentation was normal above and below the fusion and straight leg raise testing was negative. [Tr. 421]. In addition, the Plaintiff had full muscle strength throughout and could lift 10 to 20 pounds. [*Id.*]. Dr. Fromke assessed that the Plaintiff would need to remain out of work for another 90 days but that she demonstrated signs of improvement. [*Id.*]. Dr. Fromke opined that the Plaintiff "remains disabled from work at this time because she cannot lift more than 10 to 20 lbs. and she cannot perform her duties safely." [*Id.*].

When the Plaintiff returned in June 2011, x-rays of the lumbar spine were stable, but the Plaintiff exhibited post laminectomy pain going down the back of her right leg with neuropathic features and diminished sensation. [Tr. 419]. Dr. Fromke continued to assess that the Plaintiff could not work because she could not perform the activities required of her job. [*Id.*]. The Plaintiff returned in August 2011 with no changes [Tr. 417], and by January 2012, the Plaintiff reported

5

increased pain due to a recent fall [Tr. 524]. The Plaintiff exhibited moderate back spasms, limited range of motion, loss of segmentation, and was positive for straight raises on the right side. [*Id.*]. Dr. Fromke referred the Plaintiff to a pain clinic for long-term pain management and recommended she continue physical therapy. [Tr. 525]. Dr. Fromke opined that the Plaintiff remained "disabled" and there was "little likelihood" that she would make a successful return to work since she was one year post-operative. [Tr. 525-26].

The Plaintiff began treatment with Pain Consultants of East Tennessee the following month. She was diagnosed with lumbar PLS (L4-S1 PLIF), lumbar radiculopathy, lumbar degenerative disc disease, lumbar spondylosis, anxiety, and depression. [Tr. 568]. It was suspected that the Plaintiff had nerve root irritation from her surgery. [Tr. 568]. Treatment recommendations included pain medication, TENS unit, and a bilateral L5 transforaminal epidural steroid injection ("TFE"). The Plaintiff received the TFE which reduced her pain by 70-80% percent but only for three to four weeks. [Tr. 670]. She also reported a fentanyl patch provided some relief. [Tr. 676]. The Plaintiff complained of lower back pain that radiated to her knee, intermittent numbness, tingling, and weakness in her upper extremities. [Tr. 670, 676]. The Plaintiff discontinued treatment in December 2012 due to cancellation of her insurance. [Tr. 697].

The Plaintiff also received treatment from her primary care provider, Dr. Laman, beginning in September 2011. However, treatment primarily consisted of short-term illnesses. The record indicates Dr. Laman completed two "Physical Capacities Evaluations," wherein he opined on the Plaintiff's ability to perform different work-related activities. [Tr. 691-93, 769-73]

The first evaluation was completed in September 2012. [Tr. 691-93]. Dr. Laman opined that the Plaintiff could sit for six hours and stand or walk for two hours but would need an at will sit/stand option. [Tr. 691]. The Plaintiff could occasionally lift up to 10 pounds, use her hands

6

for simple grasping and fine manipulation, but could not push or pull or perform repetitive hand motions. [Tr. 691-92]. In addition, the Plaintiff could not use her feet to operate foot controls. [Tr. 691]. Further, the Plaintiff could perform occasional postural activities except climbing or crawling. [Tr. 692]. As to environmental restrictions, the Plaintiff would need to avoid unprotected heights and moving machinery, had severe restrictions against exposure to marked changes in temperature and humidity, and had moderate restrictions against exposure to dust, fumes, and gases, as well as driving automotive equipment. [*Id.*]. Dr. Laman noted that the Plaintiff suffered from disabling fatigue and chronic lower back pain and right leg pain as a result of lumbar surgery, precluding her from performing even sedentary work. [Tr. 692-93].

Dr. Laman's second evaluation was completed in October 2014. [Tr. 769-73]. The findings and limitations mirrored the initial evaluation except now, the Plaintiff could only sit for four hours and would have difficulty performing any functions with her hands. [Tr. 769-70]. However, less restrictive limitations were also assessed in that the Plaintiff could lift and carry up to 20 pounds occasionally, could perform all postural activities occasionally (including climbing and crawling), and could drive automotive equipment. [*Id.*]. Dr. Laman further opined that the Plaintiff's pain and side effects from her medication had a moderate effect on her attention and concentration, which in functional terms constituted a significant handicap with sustained attention and concentration, eliminating the ability to perform skilled work tasks. [Tr. 773].

In the disability determination, the ALJ found that the Plaintiff could perform light work except occasional postural activities and would need to avoid all exposure to hazards. [Tr. 20]. Although the Plaintiff demonstrated slight limitations in mental functioning, the ALJ determined that the Plaintiff could understand, remember, and carry out instructions, could generally function well around the public, supervisors, and coworkers, and could respond appropriately to usual work

7

situations and changes in a routine work setting. [*Id.*].

The ALJ's decision goes on to assign "little weight" to Dr. Fromke's opinions that the Plaintiff was disabled and unable to work because "they are based on a subject that is reserved for the Commissioner." [Tr. 26]. The ALJ observed, however, that Dr. Fromke's limitation that the Plaintiff could lift no more than twenty pounds was generally consistent with the Plaintiff's RFC. [*Id.*]. In addition, "little weight" was assigned to Dr. Laman's opinions. [Tr. 27]. The ALJ reasoned that although Dr. Laman was a treating physician, the opinions were "not consistent with the objective evidence of record," and the limitations assessed appeared to be based on the Plaintiff's subjective complaints. [*Id.*]. The ALJ also questioned Dr. Laman's motive behind the limitations assessed, expressing concern that Dr. Laman's restrictive opinions may have stemmed from "an effort to assist" the Plaintiff out of "sympathy" or in an effort to "avoid unnecessary doctor/patient tension." [*Id.*].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R.§ 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.* The ALJ must also give "good reasons" for the weight given to a treating source's opinion when it is not given controlling weight. *Id.*

Moreover, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Plaintiff maintains that Dr. Fromke's opinions were not properly considered notwithstanding Dr. Fromke opining on an issue reserved for the Commissioner. [Doc. 18 at 15]. The Plaintiff submits that Dr. Fromke's opinions must still be considered and cannot be ignored. [*Id.*]. Moreover, the Plaintiff argues that Dr. Laman's opinions were due more weight because they were consistent with Dr. Fromke's opinions that the Plaintiff was disabled and could not work. [*Id.* at 13-16].

While the ALJ properly recognized that a finding of "disabled" is an issue reserved for the Commissioner, s*ee* 20 C.F.R. 404.1527(d) (opinions on whether a claimant is "disabled" or "unable to work" are not "medical opinions" and are therefore "not [] given any special significance" because whether an individual meets the statutory definition of disability is an issue strictly reserved for the Commissioner), "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Soc. Sec. Rul. 96–5p, 1996 WL 374183 at *3 (July 2, 1996). To that extent, "[i]f the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3.

9

Thus, findings made by Dr. Fromke should not be dismissed or disregarded simply because the ALJ was not obligated to defer to Dr. Fromke's ultimate conclusion that the Plaintiff was "disabled." Beyond observing that Dr. Fromke's lifting restriction was consistent with the Plaintiff's RFC, Dr. Fromke's findings that led him to his conclusion that the Plaintiff could not work do not appear to have been considered by the ALJ. Specifically, Dr. Fromke found that the Plaintiff exhibited post laminectomy pain going down the back of her right leg with neuropathic features and diminished sensation, back spasms, limited range of motion, loss of segmentation, and positive straight leg raises. These findings were made one year post-operative, suggesting that the Plaintiff was unlikely to improve further and therefore could not return to work. The ALJ appears to write-off Dr. Fromke's findings entirely on the basis that his ultimate conclusion was not required any special deference.

Indeed, the ALJ goes on to assign "little weight" to Dr. Laman's opinions because "the opinions are not consistent with the objective evidence of record." [Tr. 27]. But Dr. Fromke's findings would certainly support many of the limitations assessed by Dr. Laman. Furthermore, the ALJ does not identify the inconsistent evidence that is purportedly at odds with Dr. Laman's opinions. The ALJ does not identify with specificity any treatment records, examining findings, diagnostic studies, or other evidence that specifically undermines Dr. Laman's opinions. While the ALJ discussed the medical evidence of record in general, the Court is unable to determine how the ALJ arrived at his conclusion that Dr. Laman's opinions were at odds with the evidence, especially given Dr. Fromke's examining findings.

Also troublesome is the ALJ's observation that Dr. Laman's opinions may have been the result of sympathy for the Plaintiff or an attempt to avoid unnecessary tension in the treating relationship. The ALJ's observation in this regard amounts to speculation, which is inapposite of

the procedural "good reason" requirement mandated by agency rules and regulations. The Sixth Circuit Court of Appeals has rejected identical ALJ language used in this case. *Compare* [Tr. 27] with *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) (holding that the ALJ's reasoning amounted to a "summary rejection"). Districts courts too have repeatedly chastised ALJs for using identical boilerplate language. *See Price v. Comm'r of Soc. Sec.*, No. 3:13-CV-394, 2015 WL 93644, at *5 (S.D. Ohio Jan. 7, 2015) ("Such a critique is not a 'good reason' for discounting a treating physician's opinion where the possibility of bias is not supported by any specific evidence in the record.") *adopted by* No. 3:13CV394, 2015 WL 1402587, at *1 (S.D. Ohio Mar. 25, 2015); *Antes v. Comm'r of Soc. Sec.*, No. 1:12-CV-1188, 2014 WL 1366465, at *3 (W.D. Mich. Mar. 31, 2014) ("Such speculative reasoning cannot be construed to constitute the required 'good reasons,' or substantial evidence, for rejecting Dr. Simmons' opinions."); *Paulos v. Comm'r of Soc. Sec.*, No. 12-CV-13390, 2013 WL 4507922, at *5 (E.D. Mich. Aug. 23, 2013) ("This asserted reason for rejecting Dr. Engelmann's opinion is no reason at all and it is certainly not a 'good reason.'"); *Henry v. Astrue*, No. CIV.A. 09-373-GWU, 2011 WL 676928, at *6 (E.D. Ky. Feb. 16, 2011) ("Essentially, the ALJ is simply making a conclusory statement that the limitation of the plaintiff . . . is not supported by objective findings and that, based on no more than supposition, the opinion might have been given as an attempt to accommodate the plaintiff.").

The only medical evidence discussed by the ALJ that is directly at odds with Dr. Laman's opinions is the medical opinion offered by a non-examining state agency physician who assessed limitations consistent with the Plaintiff's RFC and whose opinion was given "great weight" by the ALJ. [Tr. 26]. "Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight

only when the other sources agreed with that opinion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).

The Court pauses to give some credence to the ALJ's additional finding that Dr. Laman's opinions appear to be based on the Plaintiff's subjective complaints. In assessing the Plaintiff's credibility, the ALJ observed that although Dr. Laman was the Plaintiff's primary care provider, the Plaintiff seldom complained about her back, "which could indicate the claimant's back did not hurt at the time." [Tr. 27]. Arguably, the sporadic treatment the Plaintiff received in regard to her disabling impairments, such as her back, could support the ALJ's finding in this regard. While the Plaintiff contends that Dr. Laman's opinions are "well supported by his treatment of the Plaintiff [and] his examinations," [Doc. 18 at 16], she does not cite any specific treatment record or examination finding to support her argument.

Even so, the Court cannot ignore, as discussed above, the ALJ's failure to identify which "objective evidence of record" is inconsistent with Dr. Laman's opinions, particularly in light of the ALJ's failure to give fair consideration to Dr. Fromke, or the ALJ's speculative conclusion that Dr. Laman's opinions may have been given out of sympathy. Therefore, the ALJ's cited reasons, taken together, fall short of the substantial evidence standard and do not constitute "good reason" for assigning "little weight" to Dr. Laman's opinions.

Accordingly, the case will be remanded to the ALJ to reevaluate Dr. Fromke's and Dr. Laman's opinions consistent with 20 C.F.R. § 404.1527(c).

### 2. Consultative Examiner Robert Blaine, M.D.

The Plaintiff also challenges the ALJ's treatment of Dr. Blaine's opinion.

Dr. Blaine performed a consultative examination on January 4, 2012. [Tr. 515-17]. Upon examination, the Plaintiff demonstrated normal range of motion of the back, elbows, wrist, knees,

and ankles, intact sensory in all four extremities, mostly normal flexor and extensor strength of all four extremities, and normal tandem walk, heel and toe walk, and single leg stand. [Tr. 516]. The Plaintiff also demonstrated positive straight leg raises, a mild antalgic limp favoring the right lower extremity, and a reduced range of motion of the shoulders and hips. [Tr. 516-17]. Dr. Blaine diagnosed low back pain status post fusion with hip and neck pain and paresthesias of the hands and wrists. [Tr. 517]. He then assessed the following limitations: the Plaintiff could sit for eight hours, but only walk or stand for three to four hours, she would need reasonable rest breaks and frequent changes of potions, and she could only lift and carry up to five pounds infrequently. [*Id.*].

The ALJ assigned "little weight" to Dr. Blaine's opinion because "the opinion is not supported by the objective medical evidence, and the doctor seemed to rely on the claimant's subjective complaints, which is evidenced by the generally unremarkable examination findings." [Doc. 27].

Citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983), the Plaintiff argues that the ALJ is not permitted "to disregard favorable opinions from consultative physicians, but that is precisely what the ALJ did in this case." [Doc. 18 at 21].

It is unclear the specific error the Plaintiff alleges that the ALJ committed in weighing Dr. Blaine's opinion, as the ALJ did not disregard the opinion, but explicitly addressed it in his decision. Moreover, simply disagreeing with the weight assigned to a medical opinion is not grounds for reversal. It is equally unclear how *Lashley* supports the notion that the ALJ somehow erred. The Plaintiff offers no explanation and the Court's review of the Sixth Circuit's opinion does not offer any insight.

As a one-time examiner, Dr. Blaine is not due any significant deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Nonetheless, the weight assigned by the ALJ must be supported

by substantial evidence. The Court finds that the ALJ reasonably concluded that Dr. Blaine's restrictive limitations were at odds with his examination findings. For example, although the Plaintiff demonstrated bilateral 4/5 grip strength and 5/5 flexor and extensor strength of the upper extremities, as well as full range of motion of the back, elbows, wrist, and shoulders (except internal rotation), the Plaintiff was nonetheless limited to lifting five pounds infrequently. However, given the Court's finding with regard to Drs. Fromke and Laman, the Court finds that substantial evidence does not support the ALJ's alternative finding that Dr. Blaine's opinion "is not supported by the objective medical evidence." Given that this case will be remanded so that the ALJ may reconsider the opinions offered by the Plaintiff's treating physicians, the Court finds that it would be appropriate for Dr. Blaine's opinion to be reconsidered as well.

      **B.     Remaining Issues**

The Plaintiff also argues that substantial evidence does not support the ALJ's credibility determination or the hypothetical question posed to the vocation expert. Because this case will be remanded to the ALJ for further proceedings, the Court finds that the remaining issues are not ripe for review. The ALJ's reconsideration of the medical opinions of record will necessitate a reexamination of the Plaintiff's credibility and reevaluation of steps four and five.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 17**] is **GRANTED IN PART**, and the Defendant's Motion for Summary Judgment [**Doc. 19**] is **DENIED**. The decision of the Commissioner is remanded to the ALJ for further consideration consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.

ENTER:

*/s/ Bruce Guyton*
United States Magistrate Judge